IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER DICKEY, | § § § | |
| Plaintiff, | § § | |
| V. | § § | CIVIL ACTION NO. H-18-770 |
| | § § | |
| STATE FARM BANK. F.S.B. | § § | |
| Defendant. | | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge, upon referral from the District Judge, is Defendant State Farm Bank, F.S.B.'s ("State Farm Bank") Motion to Dismiss or, Alternatively, for More Definite Statement (Document No. 3). Defendant seeks dismissal of all of Plaintiff's claims because Plaintiff fails to allege sufficient facts to state a plausible cause of action against Defendant upon which relief can be granted, and because of insufficient service of process. Plaintiff has not responded to the motion. Having considered the Motion, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion to Dismiss be GRANTED.

## I. Introduction

Plaintiff Christopher J. Dickey ("Dickey" or "Plaintiff"), proceeding pro se, filed his Original Petition ("the Petition") in the 127th Judicial District Court of Harris County, Texas, Cause No. 2018-10551, on February 19, 2018 (the "State Court Action"). (Defendant's Notice of Removal, Document No. 1-2, Attachment A). Dickey's State Court Action relates to the Defendant's attempt

to foreclose on Dickey's property located at 5150 Hidalgo Street, Unit 804, Houston, TX 77056 (the "Property").

On March 12, 2018, Defendant timely removed the Action to this Court on the basis of diversity jurisdiction. (Document No. 1). Plaintiff's Original Petition purports to allege four causes of action: "Breach of Implied Covenant & Bad Faith," "Deception & Unfair Business Practices (Federal Trade Commission Act")", "Misrepresentation & Negligent Supervision of Employees" and "Fair Debt Collections Act."

## II. Allegations in Original Petition and the Offer to Modify

Plaintiff alleges that he obtained a home-equity line of credit from Defendant on his condominium for $87,000.00 on or about July 29, 2008. He alleges that a year later, Defendant increased the loan amount to $152,500.00. Plaintiff alleges that, for seven years, he timely made "interest only" payments on the loan. Plaintiff alleges that "because of his excellent track record," Defendant told him that he would be eligible to convert the loan from an interest-only payment plan to a "Repayment Plan" and that, starting in late 2016, payments would go towards interest and principal. (Document No. 1-2, at ¶¶ 5-9, 23-24. Plaintiff alleges that Defendant's employees "willfully deceived [him] by telling him that Defendant would carry Plaintiff through hardship periods as long as Plaintiff consistently made promise payments by or before promise dates" and that "even though [the] promise payments were less than what was fully due, Defendant would keep the [Loan] alive and defer payments until later dates." (Document No. 1-2, ¶¶ 10, 24, 31-32). Plaintiff alleges that Defendant "stated more than once" that Defendant had permitted other clients to make "promise payments" and that exceptions were made for those clients to pay less than the full repayment plan required. (Document No. 1-2, ¶ 25). Plaintiff further alleges that Defendant assured

2

him that, as long as the "promise payments" continued on time, the collection phone calls would decrease significantly, to once a month. (Document No. 1-2, ¶¶26, 31-33). Plaintiff further alleges that the monthly statements sent by Defendant were for an amount greater than "promise payments." (Document No. 1-2, ¶¶ 28-29). Plaintiff alleges that when the Repayment Plan became past due, for a different amount than the agreed-upon "promise payments," Defendant initiated foreclosure proceedings. (Document No. 1-2, ¶ 28). Finally, Plaintiff alleges that Defendant "became aggressive at times over the phone" and called "repeatedly multiple times a day." Plaintiff further alleges that he was told by Defendant that the calls were recorded and copies of the calls were available, but Defendant later denied telling Plaintiff about the availability of the calls. (Document No. 1-2, ¶¶ 34-36).

### III. Applicable law

Because Defendant has filed a Rule 12(b)(6) motion, the undersigned Magistrate Judge construes the complaint in favor of the Plaintiff and has accepted as true all well-pleaded facts. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citing *Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility will not be found where the claim alleged in the complaint is based solely on legal conclusions, or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In addition, plausibility will not be found where the complaint "pleads facts that are merely

consistent with a defendant's liability" but "stops short of the line between possibility and plausibility" or where the complaint is made up of "'naked assertions devoid of further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)). The Supreme Court has further held that plausibility, not sheer possibility or even conceivability, is required to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 556-557; *Iqbal*, 556 U.S. at 678-680. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 556 U.S. at 678. Therefore, a Plaintiff must plead specific facts, not merely conclusory allegations to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A court is not bound to accept as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## IV. Discussion

State Farm Bank moves to dismiss all of Plaintiff's breach of contract claims that are related to, or arise out of, purported discussions to modify the terms of the home-equity line of credit ("Loan"). According to Defendant, any oral agreement to modify the Loan is not enforceable under Texas law because it is subject to the statute of frauds. The Magistrate Judge agrees.

The law is clear that "[a] loan agreement for more than $50,000 is not enforceable unless it is in writing." *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013)(citing Tex. Bus. & Com. Code § 26.02(b)). An agreement to modify such a loan must also be in writing to be valid. *Id.* Promissory estoppel is an exception to the statute of frauds, but the exception requires there to "have been a promise to sign a written contract which had been prepared and which

would satisfy the requirements of the statute of frauds." *Id.* at 256-57 (quoting *Beta Drilling, Inc. v. Durkee,* 821 S.W.2d 739, 741 (Tex. App.–Houston [14th Dist.] 1992, writ denied)).

Plaintiff has not alleged anything about a *written* loan modification agreement incorporating the new terms that satisfy the statute of frauds. *See Scott v. Bank of Am., N.A.*, 597 Fed. Appx. 223, 225 (5th Cir. 2014)("To satisfy the statute of frauds in Texas, a writing . . . 'must be complete within itself in every material detail and contain all of the essential elements of the agreement.'")(quoting *Starrett v. Jacobs*, 118 S.W.3d 877, 879-80 (Tex. App.–Texarkana 2003, pet. denied)). Further, Plaintiff does not allege that such a document had been prepared that Defendant promised to sign that would satisfy the requirements of the statute of frauds.

Plaintiff alleges that Defendant and its employees "willfully deceived" him when making misrepresentations about modifying his payments, making insufficient payments, not imposing late fees, and extending a grace period during his hardships, and that Defendant was negligent in supervising these employees.

Under Texas law, the elements of intentional misrepresentation are that (1) the defendant made a material misrepresentation that was false, (2) the defendant knew that the representation was false or he made it recklessly without any knowledge of its truth; (3) the defendant intended to induce plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied on the representation and thereby suffered injury. *Rio Grande Royalty Co. Inc. Energy TransferPartners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010). Further, an intentional misrepresentation claim may be barred by the economic-loss doctrine when "the parties' relationship and their attendant duties arise out of contract." *Kinder v. Federal Nat. Mortg. Ass'n*, Civ. A. No. 3:13-Cv-4617-G(BN), 2014 WL 4271149, at *7 (N.D. Tex. Aug. 29, 2014). An intentional misrepresentation

5

(or fraud by misrepresentation) claim is synonymous with a fraud claim and must satisfy Rule 9(b)'s heightened pleading requirements. *Kinder,* 2014 WL 4271149, at *6 (citing *Renfro v. CTX Mortg. Co.,* No. 3:11-cv-3132-L, 2012 WL 3582752, at *7 (N.D.Tex. Aug. 20, 2012)). A plaintiff must specify "'the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Wilson v. Wells Fargo Bank, Nat. Ass'n,* 3:13-cv-2257-O, 2014 WL 815352, at *10 (N.D.Tex. Mar. 3, 2014)(quoting *Williams v. WMX Techs.,* 112 F.3d 175, 177 (5th Cir. 1997)). "Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Electronics, Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir. 2003); *Carroll v. Fort James Corp.,* 470 F.3d 1171, 1174 (5th Cir. 2006) ("In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the misrepresentations misleading.").

Here, Plaintiff's Original Petition is short on facts. Plaintiff has not pled the "who, when, where, and how" required by Fed.R.Civ.P. 9(b). Plaintiff's allegations are wholly lacking any details about the alleged intentional misrepresentations that are the basis of its intentional representation claim and fail to meet the plausibility requirement of *Twombly* and *Iqbal.* Because Plaintiff has failed to state a plausible claim under Fed.R.Civ.P. 12(b)(6) and 9(b) for intentional misrepresentation, the claim should be dismissed.

The elements of a claim for negligent misrepresentation are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or

communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation. *Hosting Extreme Ventures, LLC v. Bespoke Group, LLC,* Civil Action No. 3:14-cv-1471-M, 2017 WL 4012922, at *11 (N.D.Tex., Aug. 23, 2017)(citing *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 396-97 (5th Cir. 2005)); *Hernandez v. U.S. Bank, N.A.,* No. 3:13cv-2164-0, 2013 WL 6840022, at *8 (N.D.Tex. Dec. 27, 2013). Under Texas law, the negligent misrepresentation must be a statement of existing fact and not a promise of future action. *Milton v. U.S. Bank Nat. Ass'n*, 508 Fed. Appx. 326, 329 (5th Cir. 2013)(citing *DeFranceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed. Appx. 200, 205 (5th Cir. 2012)). Here, Defendant's alleged negligent misrepresentations do not qualify as misrepresentations of existing facts. Rather, for example, Plaintiff alleges that Defendant's employees purportedly stated that *if* promise payments were made *then* Defendant would refrain from foreclosure.

In addition, under Texas law, the economic-loss rule bars tort claims when the parties' relationship and their attendant duties arise from a contract. *See, e.g., Sharyland Water Supply Corp. v. City of Alton,* 354 S.W. 3d 407, 417 (Tex. 2011) ("When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone."); *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W. 2d 493, 494-95 (Tex. 1991) ("if the defendant's conduct ... would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract"). Here, the Plaintiff's misrepresentation claim arises out of the Defendant's purported reneging of a purported loan modification agreement to accept "promise payments" for less than the amount owed, not to assess monthly late fees or penalties, and to carry him during the hardship period. Where a plaintiff alleges only an economic loss arising out of the contractual relationship between the parties, the plaintiff cannot assert a tort action under the economic-loss rule. *See*

7

*Sanghera v. Wells Fargo Bank*, N.A., No. 3:10-CV-2414, 2012 WL 555155, *5 (N.D.Tex. Feb.21, 2012); *Ellis v. PNC Bank, N.A.*, Civ. No. H-11-3990, 2012 WL 2958266, *4 (S.D.Tex. July 19, 2012). Thus the economic-loss rule bars Plaintiff's misrepresentation claims.

In his fourth claim, Plaintiff alleges that Defendant violated the Fair Debt Collection Practices Act when its agents or employees became "aggressive" over the phone, called multiple times a day, and denied telling him the calls were recorded and available.

Defendant argues that Plaintiff's Federal Fair Debt Collection Act ("FDCPA") claims fail as a matter of law because Defendant is not a debt collector under the Act. To state a claim under the FDCPA, a plaintiff must allege that the defendant is "a debt collector" collecting a debt. 15 U.S.C. § 1692a(6). The Act defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* Mortgage companies and loan servicers are not generally debt collectors under the FDCPA. *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)(noting that the legislative history of the act indicates that a "debt collector" does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned). Upon this record, Plaintiff's vague and conclusory allegations are insufficient to allege that Defendant is a debt collector subject to the FDCPA. *See Riley v. Wells Fargo Bank, N.A.*, No. Civ. A. H-13-0608, 2014 WL 129397, at *4 (S.D.Tex. Jan. 8, 2014).

State Farm Bank also moves to dismiss Plaintiff's claim under Texas Debt Collection Act ("TDCA"). State Farm Bank argues that Plaintiff's TDCA claim should be dismissed because plaintiff fails to allege fact sufficient support the elements of a claim under the TDCA.

The Texas Debt Collection Act, TEX. FIN. CODE §§ 392.001 *et al*, provides a cause of action for wrongful debt collection. *See Cushman v. GC Servs., LP*, 657 F.Supp.2d 834, 840 (S.D.Tex. 2009). To plead a viable TDCA claim, a plaintiff must set forth facts showing that : (1) the debt at issue is a consumer debt; (2) the defendant is a debt collector within the meaning of the TDCA; (3) the defendant committed a wrongful violation of the TDCA; (4) the wrongful act was committed against the plaintiff; and (5) the plaintiff was injured as a result of the defendant's wrongful acts. *See* TEX. FIN. CODE §§ 392.001-392.404. The TDCA prohibits a debt collector from "threatening to take an action prohibited by law" when collecting a debt. TEX.FIN.CODE § 392.301(a)(8).

Here, Plaintiff's Original Petition fails to identify *any* provision(s) of the TDCA that State Farm Bank allegedly violated. To the extent that Plaintiff's allegations relate to State Farm Bank's purported attempts to collect a debt, Plaintiff has failed to plead sufficient facts that could show the State Farm Bank made any false representation or used any deceptive means to collect a debt under TDCA §§ 392.304(a)(8) or 392.304(a)(19). The law is clear that "[d]iscussions regarding loan modification or trial payment plan are not representations, or misrepresentations, of the amount or character of the debt" under §§ 392.304(a)(8) and 392.304(a)(19)." *Watson v. Citimortgage, Inc.*, No. 4:10-CV-707, 2012 WL 381205, *7 (E.D.Tex. Feb. 3, 2012), *aff'd*, 530 F.Appx. 322 (5th Cir. 2013); *Chavez v. Wells Fargo Bank, N.A.*, 578 F.App'x 345, 348 (5th Cir. 2014)("we have previously held that statements regarding loan modifications do not concern the 'character, extent, or amount

9

of a consumer debt' under section 392.304(a)(8)"); *Clark v. Deutsche Bank Nat. Trust Co.*, ___ Fed. Appx.___, 2018 WL 507292, at * 3 (5th Cir. Jan. 22, 2018)( "[L]oan renegotiation communications do not state a claim under 392.304(a)(19)."); *Thomas v. EMC Mort. Corp.* 499 F.App'x 337, 343 (5th Cir. 2012)(failing to find any case law or other authority "indicating that the banks' failure to modify their loan as promised constitutes a violation of § 392.304(a)(19)"); *Garrett v. HSBC Bank USA, N.A.*, 3:12-cv-12-D, 2012 WL 1658796, at *3 (N.D. Tex. May 11, 2012)("In other words, the court is unable to discern from plaintiffs' state court petition how HSBC misrepresented the character, extent, or amount of plaintiffs' debt. Because plaintiffs have failed to support their TDCPA claim with any facts from which the court can reasonably infer that HSBC violated the Texas Finance Code, the court grants HSBC's motion and dismisses plaintiffs' TDCPA claim."). Upon this record, Plaintiff's vague and conclusory allegations are insufficient to state a plausible claim under the TDCA, Plaintiff's TDCA claims fail as a matter of law.

Defendant also moves to dismiss Plaintiff's claim because Plaintiff is not a consumer under the Texas Deceptive Trade Practices Act ("DTPA"), and fails to allege facts sufficient to support the elements of a claim..

Under Under Texas law, to bring a DTPA claim for a deceptive or unconscionable act, a plaintiff must show that: (1) he is a consumer under the DTPA; (2) the defendants committed a false, misleading, or deceptive act under § 17.46(b) of the DTPA or engaged in an unconscionable action or course of action under § 17.50(a)(3); and (3) these acts were the producing cause of his actual damages. *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 907 (5th Cir. 2002). To qualify as a consumer, a plaintiff "must seek or acquire goods or services by lease or purchase." *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 159 (Tex. App.-Fort Worth 2007, pet. denied)(citing

*Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 351-52 (Tex. 1987)). "Texas courts have departed from the 'facially simple statement' that a 'pure loan transaction lies outside the DPTA.'" *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 725 (5th Cir. 2013)(quoting *Walker v. F.D.I.C.* 970 F.2d 114, 123 (5th Cir. 1992)). Accordingly, the DTPA applies to a loan "if the borrower's objective is to use the loan to purchase goods or services." *Williams v. Countrywide Home Loans, Inc.*, 504 F.Supp. 2d 176, 195 (S.D.Tex. 2007). In contrast, the DTPA does not apply to complaints based on refinancing or acquiring a subsequent home-equity loan. *Miller*, 726 F.3d 725 (attempting a mortgage modification is not seeking the acquisition of a good or service); *Grant-Brooks v. WMC Mortg. Corp.*, No. 3:02-CV-2455-AH, 2003 WL 23119157, at *8 (N.D.Tex. Dec. 9, 2003)(a home-equity loan is not a service under the DTPA); *James v. Wells Fargo Bank, N.A.*, 533 Fed. Appx. 444, 447 (5th Cir. 2013)(persons seeking loan modifications or using loan services are not consumers under the DTPA); *Feuerbacher v. Wells Fargo Bank*, No. 4:15-cv-59, 2016 WL 3669744, at *9 (E.D.Tex. July 11, 2016). Because Plaintiff's allegations are based on his home-equity loan and purported modifications, and there are no allegations he used the Loan to purchase goods or services, he does not qualify as a consumer under the DPTA, and his DTPA claim fails as a matter of law.

Construing liberally Plaintiff's claim as a a claim for unreasonable collection effort, it too fails as a matter of law. An unreasonable collection effort is an intentional tort when there was "a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex.App.-Dallas 2008, no pet.). "A recent survey of Texas decisions indicates that the tort of unreasonable collection 'is intended to deter outrageous collection techniques,' particularly those involving harassment or physical

11

intimidation." *Thomas v. EMC Mortg. Corp*, 499 Fed. Appx. 337, 342 (5th Cir. 2012)(quoting *Hidden Forest Homeowners Ass'n v. Hern*, No. 4:10-CV-00551, 2011 WL 6089881, at *4 (Tex. App. -San Antonio 2011, no pet. h.)). The course of harassment must be "willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Water Dynamics, Ltd. HSBC bank USA, Nat. Ass'n*, 509 Fed. Appx. 367, 370 (5th Cir. 2013). In particular, courts have applied this cause of action based on actions that overstep the bounds of routine collection methods and rise to the level of excessive harassment. *EMC Mortg. Corp*, 252 S.W.3d at. 864-65 (lender sent a "large, very intimidating man" who was "yelling and screaming, demanded the keys to to the house, and told [plaintiffs'] family to get out"); *Bank of N. Am. v. Bell*, 493 S.W2d 633, 635 (Tex. Civ. App.-Houston [14th Dist.] 1973, no writ)(harassing conduct included twenty to twenty-three phone calls in a ten-day period to the plaintiff's home and work, in addition to threatening in-person visits). In contrast, reliance on oral representations from customer-service representatives contradicted by the terms of the loan agreement and notice of foreclosure do not constitute unreasonable collection efforts. *Milton,* 508 Fed. Appx. at 330.

Here, Plaintiff's vague allegations about "aggressive" phone calls that were made "multiple times a day" do not allege conduct amounting to harassment intended to inflict mental anguish or bodily harm. This claim for unreasonable collection efforts fails as a matter of law.

Defendant also moves for dismissal of all claims under Rule 12(b)(5) for insufficient service of process because Defendant has not been served with a summons or citation and because neither Texas law nor Federal law allows a party to a suit to serve process on the opposing party.

Under Federal Rule of Civil Procedure 12(b)(5), a court may dismiss a case for insufficient service of process. Fed.R.Civ.P. 12(b)(5); *Kreimerman v. Casa Veerkamp, S.A de C.V.,* 22 F.3d 634,

645 (5th Cir. 1994). "In the absence of service of process . . . a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 350 (1999).

Fed.R.Civ.P. 4(c)(1)provides that "[a] summons shall be served together with a copy of the complaint." Fed.R.Civ.P. 4(c)(1). The rule further provides that service of process upon a corporation must be made upon "an officer, a managing or general agent, or . ..any other agent authorized by appointment or by law to receive service of process." Fed. R.Civ.P.4(h)(1). Rule 4(h)(1) also provides that service may be made "pursuant to the law of the state in which the district court is located, or in which service is effected." Texas allows service of process on "[t]he president and all vice presidents of the corporation and the registered agent of the corporation." Tex.Bus. Corp.Act Art. 2.11(A). Sufficient process requires "a true copy of the citation with a copy of the petition attached thereto." Tex.R.Civ.P. 106(a)(2). Even though Texas permits service of process via certified mail, return receipt requested, only the clerk of the court may serve process in this manner. Tex.R.Civ.P.103, 106(a)(2). Also "[n]o person who is a party to or interested in the outcome of a suit shall serve any process." Tex.R.Civ.P. 103.

Here, the record shows that the original petition was served on Mr. Bobby D. Amick, who serves as State Farm Bank's outside counsel. Mr. Amick is not Defendant's registered agent, president, or vice president under Texas law, nor is he "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" on behalf of Defendant under Rule 4(h)(1)(B). The sending by Plaintiff of a copy of the Original Petition to Mr. Amick is not service on State Farm Bank. Thus Plaintiff has failed to properly serve Defendant under

Federal and State law. Plaintiff has not responded to Defendant's Motion to Dismiss, and has failed to show good cause for his failure to effect service or made any attempt to properly effect service.

### V. Amendment

Under Fed.R.Civ.P. 15(a)(2), leave to amend should be freely given "when justice so requires." When a claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies . . . unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Here, the record supports not allowing amendment. Plaintiff has not filed a response to the motion to dismiss, which under Local Rule 7.4 will be taken as a representation of non-opposition; he has not attempted to file an amendment to cure any pleading defects even after the Defendants pointed out his deficiencies in its Rule 12(b)(6) and 12(b)(5) motion to dismiss. Even if Plaintiff were allowed to amend, because there is nothing in the record to indicate that Plaintiff could state a plausible claim against Defendant. Plaintiff's claims should be dismissed without leave to file an amended pleading.

### VI. Conclusion and Recommendation

Based on the reasons set forth above, the Magistrate Judge RECOMMENDS that Defendant's Motion to Dismiss (Document No. 3) be GRANTED and that Plaintiff's Original Petition be DISMISSED under Rule 12(b)(6).

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written

objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Serv. Auto Assn,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Court Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 10th day of May, 2018

*Frances H. Stacy*
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE